UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON LEONE,<br>    Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC<br>D/B/A MR. COOPER; HSBC BANK<br>USA NATIONAL ASSOCIATION AS<br>TRUSTEE FOR MORTGAGE PASS-<br>THROUGH CERTIFICATES, SERIES<br>MLMI 2005-A10,<br>    Defendants. | C.A. No. 21-323-JJM-LDA |

## ORDER

Plaintiff Jason Leone brought this case against Defendants Nationstar Mortgage, LLC and HSBC Bank USA National Association as Trustee for Mortgage Pass-Through Certificates, Series MLMI 2005-A10 ("HSBC") for breach of contract arising out of the foreclosure on his real property located in North Kingstown, Rhode Island. Mr. Leone alleges that HSBC and Nationstar breached the mortgage, specifically Paragraph 22, in two ways: (1) by failing to advise him that he had the right to reinstate the loan at least five days before the scheduled foreclosure auction date and (2) by sending the Notice prior to obtaining a mortgage servicer license from the Division of Banking as Rhode Island law requires. Defendants filed a Motion for Summary Judgment (ECF No. 21), asking the Court to rule as a matter of law that they did not breach the mortgage contract.

I. **BACKGROUND**

On July 1, 2015, a Rhode Island law passed requiring third-party mortgage loan servicers to obtain a loan servicing license from the Rhode Island Department of Business Regulations, Division of Banking ("Division of Banking"). Nationstar admits that it inadvertently did not apply for the license until almost a year after the law went into effect.

The Division of Banking investigated Nationstar but ultimately awarded it a loan servicing license in August 2017. The parties entered into a Consent Agreement related to the loan servicing Nationstar conducted during the time it was not licensed. The Consent Agreement found no outstanding customer complaints against Nationstar. The Division of Banking did not issue a cease-and-desist order for the period Nationstar was not license but imposed a $9,200 fine.

Meanwhile, Mr. Leone defaulted on his mortgage for failure to make payments after October 1, 2007. On April 19, 2017, when it did not have a loan servicing license, Nationstar sent him a Notice of Default ("Notice"), which informed him that he must pay the total amount due in addition to any other amounts that may become due and failure to pay by May 24, 2017, "may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property." ECF No. 21-2 at 46. If the loan was accelerated, the Notice indicated that Mr. Leone had "the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *Id.* Mr. Leone did not cure the default or reinstate the mortgage.

2

HSBC mailed a Notice of intent to foreclose pursuant to the power of sale to Mr. Leone on October 25, 2018. After the required publication period, HSBC foreclosed on Mr. Leone's property on December 17, 2018. This lawsuit resulted.

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact

is such that a reasonable jury could resolve the point in favor of the nonmoving party .... '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted).

Additionally, the moving party must be entitled to judgment as a matter of law. The moving party is "entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (citations omitted) (internal quotation marks omitted). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration in original) (emphasis in original) (citations omitted) (internal quotation marks omitted).

## III. DISCUSSION

The Court examines Mr. Leone's two arguments, that (1) Defendants failed to advise him that he had the right to reinstate the loan at least five days before the scheduled foreclosure auction date and, (2) Nationstar acted on his foreclosure without a mortgage servicer license from the Division of Banking. Because the Court finds that there are no disputed issues of material fact in the record and that Mr. Leone's arguments in support of his claim are unpersuasive, the Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 21.

### A. Paragraph 22 Notice

Mr. Leone alleged in his complaint and maintains in his opposition to the motion that the Notice gave an incorrect date by which to cure the default because it should have been five days before the foreclosure as dictated in Paragraph 19 of the mortgage. Defendants argue that Mr. Leone conflates, and confuses, the act of curing a default after receiving Paragraph 22 Notice and reinstating a mortgage after the cure period ends as set forth in Paragraph 19. First, it is well settled that Paragraph 19 does not have a notice requirement, so Mr. Leone was not entitled to any communication about his rights under that part of the mortgage. *See Spino v. Rushmore Loan Mgmt. Servs., LLC*, 606 F. Supp. 3d 1, 4 (D.R.I. 2022); *Viera v. Bank of New York Mellon as Tr. for Certificate Holders of Cwalt, Inc.*, C.A. No. 17-523-WES-PAS, 2018 WL 4964545, at *7 (D.R.I. Oct. 12, 2018) ("Paragraph 19 is not the correct source for assessing what notice was required under the mortgage agreement prior to initiating a foreclosure because that paragraph merely outlines a borrower's right to reinstate after foreclosure proceedings have already commenced."); *Harrington v. Fay Servicing, LLC*, C.A. No. 21-424-JJM-LDA, 2022 WL 1657323, at *3 (D.R.I. Apr. 7, 2022).

Moreover, it is undisputed that Nationstar sent Mr. Leone a Notice that stated everything that was required under Paragraph 22. It advised him that the mortgage was in default for failure to make the payment due on October 1, 2007 and all subsequent payments. It communicated the total amount due and the date by which he had to cure and also that he had the right to reinstate after acceleration and to

bring an action in court. Paragraph 22 does not require notice of a fictional right to cure a default or cure an arrearage up to five days before foreclosure. Therefore, it is undisputed that Defendants complied with the notice requirements in the mortgage and were not in breach of the contract.[1]

**B.    Mortgage Servicer License**

Mr. Leone alleged that Nationstar was not a licensed third-party loan servicer in violation of R.I. Gen. Laws § 19-14.11-1 and so it breached the mortgage contract. There is no dispute that Nationstar did not have a Rhode Island mortgage loan

---

[1] Additionally, the Court finds that there are no disputed issues of fact relative to Mr. Leone's alleged damages in this case. Damages are an element of a breach of contract claim. *Petrarca v. Fidelity & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005). Significantly, in cases where courts held that non-compliance with foreclosure requirements other than notice provisions constitutes a breach of contract, "almost all of those decisions required the plaintiffs to show actual damages based on the breach." *Andrade v. Ocwen Loan Servicing, LLC*, C.A. No. 18-385 WES, 2021 WL 2117117, at *4 (D.R.I. May 25, 2021); *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1133 (11th Cir. 2014) ("[B]ecause [plaintiff] has failed to put forward any evidence of damages caused by the purported breach of these contract terms or seek any cognizable relief, we conclude that summary judgment properly was granted ...."); *Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-136 WES, 2018 WL 1083581, at *2 n.3 (D.R.I. Feb. 27, 2018) ("While claims based on the mortgagee's failure to comply with the 24 C.F.R. § 203.604(b) face-to-face meeting requirement sometimes founder at the summary judgment phase because of the difficulty of demonstrating actionable damages, whether this case will suffer a similar fate is beyond the scope of this report and recommendation." (citation omitted)); *Dan-Harry v. PNC Bank, N.A.*, C.A. No. 17-136 WES, 2019 WL 1253481, at *2 (D.R.I. Mar. 18, 2019) (granting summary judgment when the plaintiff "failed to offer proof of damages caused by the [d]efendant's alleged breach of contract"); *Njema v. Wells Fargo Bank, N.A*, 124 F. Supp. 3d 852, 856 (D. Minn. 2015) (same).
Mr. Leone alleges unidentified servicing fees levied during the time Nationstar was not licensed but has failed to cite to any documents demonstrating that any such fees were actually incurred. There is not dispute that he did not attempt to cure his default or reinstate the mortgage. He has no evidence of recoverable damages and thus, his breach of contract action fails on the fourth element.

servicer license at the time it sent Mr. Leone the Notice. It applied for its license on May 17, 2016 and sent the Notice while the Division of Banking was reviewing its application. Nationstar argues that the technical oversight of the licensing neither breaches the contract nor affects the validity of the foreclosure. They posit that if the Division of Banking wanted Nationstar to stop servicing mortgages during the pendency of its application, it would have issued a cease-and-desist order as the statute permits.

The Court turns to the statutory language to determine the scope of the licensing of loan servicers and any prohibitions on their activities. As the factual matter of whether Nationstar had a third-party servicer license is not in dispute, the Court will look to the statutory scheme governing the licensing process to determine as a matter of law whether Nationstar breached the mortgage contract. "'In matters of statutory interpretation [the] ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Epic Enter. LLC v. Bard Grp., LLC*, 186 A.3d 587, 589-90 (R.I. 2018) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)). "'It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Id.* at 590 (quoting *Alessi v. Bowen Court Condo.*, 44 A.3d 736, 740 (R.I. 2012)). "It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation." *In re Brown*, 903 A.2d 147, 149 (R.I. 2006). "When performing our duty of statutory interpretation, this Court 'consider[s] the entire statute as a whole; individual sections must be

considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.'" *Id.* (quoting *Sorenson v. Colibri Corp.*, 650 A.2d 125, 128 (R.I. 1994)); *Sosa v. City of Woonsocket*, 297 A.3d 120, 124 (R.I. 2023).

Title 19, Chapter 14 governs licensed activities of financial institutions. Specific to loan servicers, R.I. Gen. Laws § 19-14.11-1(a) states that "[n]o person shall act as a third-party loan servicer, directly or indirectly, for a loan to a Rhode Island borrower without first obtaining a license under this chapter from the director, or the director's designee." The statute also specifically lists "[c]onduct[ing] any business covered by this chapter without holding a valid license as required under this chapter, or assist[ing], or aid[ing] and abet[ing], any person in the conduct of business under this chapter without a valid license as required under this chapter" as a "prohibited activity." R.I. Gen. Laws § 19-14.11-4(17). These two sections, when read in isolation, make it clear that servicers need a license to do business in Rhode Island.

Considering the statute as a whole, however, the Court notes that the Legislature enacted a section stating "[a]ny revocation, suspension, or surrender of a license shall not impair or affect the obligation of any preexisting lawful contract between the licensee and any customer." R.I. Gen. Laws § 19-14-17. This section unambiguously states that a servicer's lack of a license (whether it is because it was revoked, suspended, or surrendered) does not affect the existing contractual relationship between the servicer and the mortgagee. This interpretation makes sense in this case since the Division of Banking took no action against Nationstar in the form of a cease-and-desist order even though it knew Nationstar was continuing

8

to conduct business while its application was pending. And the Consent Agreement did not address whether any business done during the pendency of Nationstar's license was valid or not. Therefore, the Court finds that the statutory scheme governing the licensing of third-party servicers does not dictate that any action taken by an unlicensed servicer is void.

Mr. Leone relies on *Andrade v. Ocwen Loan Servicing, LLC* to support his argument that Nationstar's unlicensed status during the foreclosure process violated applicable law[2] and breached the mortgage. C.A. No. 18-385 WES, 2021 WL 2117117, at *4 (D.R.I. May 25, 2021). In *Andrade*, Ocwen did not have a license, was ordered to cease-and-desist all activities during the review period, violated that order, and was not licensed when the foreclosure was concluded.

The Court finds that case unpersuasive for three reasons. First, it was decided on a motion to dismiss, and the court merely found that Mr. Andrade's allegations, a matter of first impression in Rhode Island, were sufficient to survive that standard of review. Mr. Leone's case is now at the summary judgment stage where facts as to notice and damages have been developed during discovery and no material disputes have been revealed. Second, in Mr. Andrade's case, the Division of Banking had issued a cease-and-desist order and the Department of Business Regulation noted in

---

[2] Mr. Leone argues that Defendants violated "applicable law" as described in the mortgage when exercising the statutory power of sale while unlicensed. The "Applicable Law" referenced in Paragraph 22 relates to "other remedies permitted by Applicable Law" in addition to the statutory power of sale in the event the borrower does not cure the default on or before the date specified in the Notice. The "applicable law" does not reference the Division of Banking's licensing statutory scheme.

the Consent Order that Ocwen engaged in dishonest and financially irresponsible conduct in its business such that its continued operation without a license was more egregious. In this case, the Division of Banking knew that Nationstar did not have a license while it reviewed the application and did not issue a cease-and-desist order, ostensibly allowing Nationstar to continue its servicing operations while its application was pending. Ultimately, the Division of Banking issued Nationstar its license, noted that no consumer complaints were made against Nationstar, entered into a Consent Agreement (which did not detail any effect on the transactions undertaken during the unlicensed period), and imposed a $9200 fine. Finally, in *Andrade* the entire foreclosure process occurred while Ocwen was unlicensed and operating in violation of the cease-and-desist order and here, Nationstar received its license prior to noticing and completing the foreclosure. The facts and procedural posture in *Andrade* are too inapposite to provide any guidance here.

Nationstar's lapse in licensing and conduct during the pendency of its application with full knowledge of the Division of Banking did not breach the mortgage.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 21.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

October 5, 2023